## PEOPLE v. CALLAHAN.

(Supreme Court, Special Term, New York County.  September 11, 1911.)

1. WITNESSES (§ 274*)—CROSS-EXAMINATION—"BEAT."
   The district attorney, in examining a witness who had testified to accused's previous good character, asked whether witness did not know that accused was theretofore "reputed to have committed grand larceny and to have beaten the case," which question was answered in the negative, and no objection was taken thereto, and the court was not requested to admonish the jury as to its propriety, and did not do so. *Held*, that it could not be said that the question prejudiced accused by implying that he escaped from conviction for grand larceny by some corrupt method, since the word "beat" is sometimes used in the sense of winning.

   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 965, 966; Dec. Dig. § 274.*

   For other definitions, see Words and Phrases, vol. 1, p. 729.]

2. WITNESSES (§ 274*)—CROSS-EXAMINATION—CHARACTER WITNESS.
   A witness, called to testify to accused's character, may be asked on cross-examination many questions to test his honesty and credibility, which would be objectionable when asked of other witnesses; the state having great latitude on such a cross-examination.

   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 965, 966; Dec. Dig. § 274.*]

Patrick Callahan was convicted of third degree burglary, and applies for a certificate of reasonable doubt.  Application denied.

James A. Delehanty, Asst. Dist. Atty., for the People.
Clark L. Jordan, for defendant.

DELANY, J. This is an application under section 527 of the Code of Criminal Procedure for a certificate of reasonable doubt. The defendant was convicted of burglary in the third degree. The learned counsel for defendant asserts that the verdict was against the weight of evidence, but after a careful review of the case I have reached the conclusion that there is ample evidence to sustain the finding of the jury, and that no reasonable doubt can arise on that score.

[1] He advances, however, a claim that the conduct of the assistant district attorney who had charge of the prosecution was such as to cause a reasonable doubt as to whether the defendant was accorded a fair and impartial trial. The conduct about which he raises the question consisted in an alleged abuse of the right of cross-examination. A witness had testified to the previous good character of the defendant for honesty, and on cross-examination was asked this question:

"Don't you know that in March, 1910, this defendant Callahan was reputed —you say you know his reputation—reputed to have committed grand larceny and to have beaten the case?"

The question was answered in the negative, but neither objection nor exception was taken to it, nor was the court requested to give any admonition to the jury on the subject, nor was any motion made based upon the episode, nor did the court of its own motion interfere. Counsel for defendant argues that the obvious purpose of this ques-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion was to prejudice the jury by giving it the impression that the defendant, although guilty of the crime of larceny, by some corrupt or subtle method had frustrated the ends of justice. It is, of course, impossible to say how men sitting in judgment may be affected by what is said and done before them, and it is not within the contemplation of men to insure against prejudice arising from unintentional suggestion in such cases. The imperfection of nature and the complex constitution of the human mind make such a condition unattainable.

[2] A character witness so called, may properly be asked on cross-examination many questions which would be objectionable if directed to others, and this in order to test his honesty of purpose, as well as the credibleness of his testimony to the reputation of the accused, and in this state great latitude has been allowed in that respect. On this point may be cited the case of People v. Levine, in which, after affirmance in the Appellate Division, 140 App. Div. 910, 125 N. Y. Supp. 1137, Mr. Justice Werner said:

"I think it was entirely competent to ask those who had testified to the defendant's good character whether they had ever heard of his having been previously arrested, or whether they had ever heard him called a 'fence,' which is the term commonly applied to people in the business of receiving stolen goods."

The immediate question in this case, therefore, is: Does the record show such a sinister design in the conduct of the prosecuting officer as is attributed to him by the defense on this application, and did it produce the effect intended? The only part of the question alleged to be objectionable is that the defendant "beat the case"—the charge of larceny. But may it be said that this necessarily implies that the defendant, though guilty, escaped conviction through unworthy means? It may simply mean that he was acquitted. The word "beat" is used in several ways nowadays in the sense of winning. I grant that it is not an elegant use of our language, which in common speech is unfortunately so often debased; but my inquiry here is not into the purity of the term employed, but the meaning which it conveyed to the jury.

Was it taken, and intended to be taken, by the jury in a sinister sense, simply to prejudice the defendant; or was it used without any improper design, merely to test the familiarity of the witness with the reputation to which she was testifying? I do not think that I am warranted in assuming that the prosecuting officer departed from his duty and intended to prejudice the jury, nor that the question had that effect, in view of the fact that the record does not show, as above indicated, that either at the time when the question was asked, or at any other stage of the trial, did the court or counsel for the defendant appear to be affected by it, or deem it necessary to record dissent, or to attempt to remove any impression unfavorable to the defendant produced by it. It would be most natural, if any harmful insinuation was involved in an equivocal question, that something in the case would disclose it to a reviewer.